# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DDR HOLDINGS, LLC    :
            :
  v.         :   CIVIL ACTION NO. 17-498 (lead case)
            :
PRICELINE.COM, LLC, et al.   :

---

## ORDER

    **AND NOW**, this **5th** day of **June, 2018**, upon consideration of the motions for

judgment on the pleadings filed by Defendants Priceline.com and Booking.com (ECF No. 21)

and by Shopify (ECF No. 30), and the responses and replies thereto (ECF Nos. 42, 51, & 52), it

is hereby **ORDERED** that the request for oral argument is **DENIED** and the motions are

**DENIED**.[1]

---

[1]   The Court concludes that under step 2 of the <u>Alice Corp. Pty Ltd. v. CLS Bank Int'l</u>, 134 S. Ct. 2347 (2014) analysis, the three patents at issue are similar enough to '399 that they share the same inventive concept found by the Federal Circuit Court of Appeals in <u>DDR Holdings, LLC v. Hotels.com, LP</u>, 773 F.3d 1245 (Fed. Cir. 2014) regarding '399, and, thus, are directed to patentable material.

   Regarding '399, the Federal Circuit court found that its claims "address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink," <u>DDR Holdings</u>, 773 F.3d 1257, and that the patent addresses the "challenge of retaining control over the attention of the customer in the context of the Internet." <u>Id.</u> at 1258.

   The three patents at issue, even though their claims do not specify how the composite web pages are generated and allow the host and the merchant to be the same entity, still address the issue of retaining control over the customer's attention through the use of a composite page provided by the third party outsource provider. The patents allow the host to control the attrition of internet traffic away from its site. Whether the visitor would otherwise be directed to another site owned by the host or one owned by a third party, the patented methods allow the host to prevent visitors from being "instantly transported away" to another website.

   Regarding the inventive concept that saved '399 from being too abstract, the Federal Circuit court found that the claims "do not attempt to preempt every application of the idea of

It is hereby further **ORDERED** that pursuant to the February 9, 2018 stipulation

staying portions of the scheduling order (ECF No. 58), **no later than June 27, 2018,** the parties

shall meet, confer, and file a joint status report informing the Court as to whether they believe

that the stay should be lifted (and the reasons therefor), and if so, a proposed amended

scheduling order.

**AND IT IS SO ORDERED.**

**/s/ Eduardo C. Robreno**
**EDUARDO C. ROBRENO,   J.**

---

increasing sales by making two web pages look the same," and instead, "recite a specific way to automate the creation of a composite web page by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet." Id. at 1259.

The three patents at issue here do the same, even though they do not specify that the outsource provider generates the composite page. This detail is not essential to the above description of the inventive concept in '399. Instead, even without specifying how the composite pages are generated, the patents still describe the automated delivery of the page by an outsource provider that incorporates the look and feel of the host site with the details of the merchant's product.

The Federal Circuit court continued its step 2 Alice analysis by finding that the claims of '399 "do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" (i.e., the instantaneous loss of visitors). Id. at 1257. Similarly, the court found that "[i]nstead of the computer network operating in its normal, expected manner by sending the website visitor to the third-party website that appears to be connected with the clicked advertisement, the claimed system generates and directs the visitor to the above-described hybrid web page that presents product information from the third-party and visual 'look and feel' elements from the host website." Id. at 1258-59.

Again, while these descriptions mention that the merchant is a third party to the host and that the outsource provider generates as well as sends the visitor the composite web page, these two facts were not critical to the court's analysis of '399. Even without them, the problem and basic solution detailed by all four patents remains the same.

In that the Court concludes that the three patents at issue share the same inventive concept as '399, it denies Defendants' motions for judgment on the pleadings.